IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 29, 2020

**STATE OF TENNESSEE v. DANE LEE DUCKETT**

**Appeal from the Criminal Court for Cumberland County
Nos. 18-37, 18-38, 18-39   Gary McKenzie, Judge**

_____

**No. E2019-01788-CCA-R3-CD**

_____

The Appellant, Dane Lee Duckett, appeals the Cumberland County Criminal Court's denial of his motion to withdraw his guilty pleas to three counts of possession of one-half gram or more of methamphetamine with intent to sell, which resulted in an effective ten-year sentence.  Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

J. Patrick Hayes, Cookeville, Tennessee, for the appellant, Dane Lee Duckett.

Herbert H. Slatery III, Attorney General and Reporter; T. Austin Watkins, Assistant Attorney General; Bryant C. Dunaway, District Attorney General; and Amanda Worley, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

In January 2018, the Cumberland County Grand Jury indicted the Appellant in case number 18-39 for possession of one-half gram or more of methamphetamine with intent to sell, a Class B felony; possession of one-half gram or more of methamphetamine with intent to deliver, a Class B felony; possession of a firearm with the intent to go armed during the commission of a dangerous felony, a Class D felony; possession of a firearm after having been convicted of a felony drug offense, a Class E felony; possession of drug paraphernalia, a Class A misdemeanor; and driving on a cancelled, suspended, or revoked license, a Class B misdemeanor.  In February 2018, the grand jury indicted him in case

number 18-37 for possession of one-half gram or more of methamphetamine with intent to sell or deliver. In April 2018, the grand jury indicted him in case number 18-38 for possession of one-half gram or more of methamphetamine with intent to sell; possession of one-half gram or more of methamphetamine with intent to deliver; theft of property valued $10,000 or more, a Class C felony; possession of marijuana, a Class A misdemeanor; and possession of drug paraphernalia, a Class A misdemeanor.

On July 9, 2018, the Appellant pled guilty in each case to one count of possession of one-half gram or more of methamphetamine with intent to sell. At the guilty plea hearing, the State gave the following factual account of the crimes:

> Your Honor, in Case 18-37, in that case on 8/22 of 2017, Deputy Lucas Turner with the Cumberland County Sheriff's Department saw a vehicle parked on Marinack Lane that he believed an individual was driving that had warrants. When he made contact with the driver, he instead discovered Mr. Duckett and a passenger. While speaking with Mr. Duckett, he said that he wasn't driving, but the officer had knowledge that he didn't have a valid driver's license, and said he was only looking at jewelry. He showed him a bag that had jewelry, as well as a black pipe with residue. Mr. Duckett had stated the pipe was his and that he used it to, to smoke methamphetamine.
>
> There was then a search of Mr. Duckett's person, and a substance weighing seven grams of methamphetamine was found. And the officer would state that that's an amount commonly used in the sale and delivery of methamphetamine.
>
> In case 18-38, Officers were in Walmart. They saw Mr. Duckett, and they had knowledge that he was possibly in possession of a stolen vehicle, and that he had outstanding warrants, so they placed him under arrest. They located on his person a key chain. He had numerous keys, including a key belonging to a 2015 Hyundai Veloster, a stolen vehicle. They found that same vehicle in the Walmart parking lot that was able to be opened with the key that Mr. Duckett had on a key chain.
>
> During a search of that vehicle, there were two Velcro bags and a drawstring bag with a total of five small Ziploc bags. Three of those bags were containing a white crystal-like substance, being methamphetamine, in an amount of seven grams, which is over point five grams, for sale and delivery.

In Case 18-39, Highway Patrolman Al Seitner observed Mr. Duckett in a vehicle on August 3rd, 2017. He had prior knowledge that Mr. Duckett's driver's license was revoked. There was a passenger in the vehicle as well, and as they exited the vehicle, there was a plastic baggie found. The individual was placed under arrest.

There was an inventory of Mr. Duckett's vehicle, and during that inventory search, there were baggies weighing approximately six point six grams of methamphetamine.

Pursuant to the plea agreement, the Appellant received concurrent ten-year sentences.[1] On September 14, 2018, the trial court held a sentencing hearing to determine the manner of service of the effective ten-year sentence and ordered that the Appellant serve the sentence in confinement. That same day, the trial court granted trial counsel's motion to withdraw.

On October 1, 2018, the Appellant filed a pro se motion to withdraw his guilty pleas. The trial court appointed counsel (hereinafter "hearing counsel") and held a hearing on the motion. During the hearing, the Appellant testified that trial counsel met with him "quite regular" in court and visited him in jail. The Appellant did not receive any discovery or review any discovery materials prior to his guilty pleas. However, he received and reviewed discovery after his guilty pleas. The Appellant said that in the case involving the stolen car, the arresting officer claimed he arrested the Appellant because he knew a DNA swab would link the Appellant to the stolen vehicle. The Appellant learned from the discovery materials, though, that the DNA in the car was not his DNA and that a woman who was arrested with him admitted that she "took the car." The Appellant said that he also watched a video of his arrest and that the woman said "three different times on video that if [the police] searched the vehicle, if they had found anything in it, that it was hers, not [his]." The Appellant stated that if he had known about the DNA and the woman's admissions, a charge for the sale and delivery of methamphetamine would have been "off" one of his cases.

The Appellant testified that in the case in which the police officer found methamphetamine on his person, the officer charged him with possession of methamphetamine. However, the grand jury indicted him for selling and delivering methamphetamine. The Appellant said that the police did not find any scales or baggies in the car and that he possessed the methamphetamine for personal use.

Hearing counsel asked the Appellant, "If you had seen the matters that you've talked about before you pled, would you have still pled?" Appellant answered,

---

[1] The plea agreement is not in the appellate record.

Well, I, I would hope the lawyer would file something on it to have them charges done away with. I mean, if the DNA isn't mine, then that's not me, so that would do away with that charge, wouldn't it? And then if I, I didn't steal the car, clearly. And if someone took admission to the guilt beforehand, before I was even charged, I feel like that would have took that one, and that would have left me with a felony possession, I guess, of meth in one case.

Hearing counsel then asked what the Appellant was "hoping to get out of this," and the Appellant responded, "I don't know. I've just been hitting the law library to correct a manifest injustice, I mean, I realized that if I'm going to be in prison doing some time, I was just thinking that it would be corrected."

On cross-examination, the Appellant acknowledged that trial counsel represented him in general sessions court, during his preliminary hearing, and at his guilty plea hearing. The Appellant also acknowledged that Trooper Seitner testified at his preliminary hearing, that police officers testified about the crimes at a hearing to revoke his bond, and that he and trial counsel "were able to discuss those matters." The Appellant said that he asked trial counsel for discovery "multiple times" but that trial counsel was "having to get it off-line or something." The Appellant and trial counsel discussed his cases every time he appeared in court "except once in general sessions."

The Appellant acknowledged that he had four prior felony convictions and that those convictions "increased" his range of punishment if convicted in case numbers 18-37, 18-38, and 18-39. He also acknowledged that he was facing "three different sets of charges" in those cases. Although trial counsel met with the Appellant, trial counsel never brought discovery to their meetings. However, they discussed the strengths and weaknesses of his cases. The Appellant agreed to plead guilty but did not receive a copy of discovery materials until the day of his guilty pleas. During the plea hearing, the trial court asked the Appellant if trial counsel "had done a good job," and the Appellant said yes.

The Appellant testified that he received discovery "[f]orty something days" prior to his sentencing hearing and that the prison's "legal department" helped him review the materials. He acknowledged that he pled guilty due to the lengthy sentences he was facing if convicted at trial. He reiterated, though, that he pled guilty without knowing the evidence against him.

Regarding the Appellant's claim that a DNA swab did not match his DNA, the State showed the Appellant an Official Forensic Biology Report prepared by the Tennessee Bureau of Investigation (TBI). According to the report, which the State introduced into

evidence, the TBI received Ziploc baggies from the stolen vehicle and buccal swabs from the Appellant and was asked to analyze the baggies for "touch DNA." The TBI stated in the report that it would not conduct touch DNA analysis on items associated with a nonviolent crime. The Appellant insisted that DNA analysis was performed, so the trial court requested that hearing counsel look through discovery for DNA analysis by the TBI. Hearing counsel did not find any DNA analysis but advised the trial court that the TBI performed latent fingerprint analysis on the Ziploc baggies from the stolen car and that the TBI failed to identify any fingerprints.

The Appellant acknowledged that even if a jury had convicted him of only one charge of possession of methamphetamine, his possible punishment for the Class B felony would have been at least twelve years. The State asked if the Appellant understood that he was requesting to set aside a ten-year sentence. The Appellant said yes and that he was trying "to correct manifest injustice" because he possessed the methamphetamine for personal use. The State asked the Appellant to explain "manifest injustice," and the Appellant stated, "[T]o fix a case that maybe it was overlooked, stuff that's overlooked." The Appellant acknowledged that he "went over" his guilty plea agreement with the trial court during his plea hearing and that no one coerced him into pleading guilty.

At the conclusion of the hearing, hearing counsel argued that the trial court should set aside the Appellant's guilty pleas because trial counsel failed to provide the Appellant with discovery materials prior to the guilty plea hearing. The trial court stated that the Appellant's "basic argument" was that he would not have pled guilty if trial counsel had shown him discovery prior to his pleas and that the Appellant's claim was akin to a post-conviction claim of ineffective assistance of counsel. Hearing counsel acknowledged that the Appellant was claiming ineffective assistance of counsel regarding his pleas.

The trial court noted that the Appellant testified that DNA analysis showed his DNA was not in the stolen car when no DNA analysis was performed. The trial court also noted that trial counsel was in the courtroom during the hearing on the motion to withdraw the guilty pleas but that trial counsel did not testify because "[t]hat's a fight for another day." The trial court stated that according to the guilty plea hearing transcript, the trial court asked the Appellant if trial counsel "did a good job." The trial court also stated that the Appellant heard police officers testify about the crimes prior to his guilty pleas. Therefore, the trial court found that the Appellant failed to show that withdrawal of his pleas was necessary to correct manifest injustice and denied his motion to withdraw the pleas. Subsequently, the trial court filed a written order denying the Appellant's motion, finding that the Appellant "knowingly and voluntarily pled guilty in these cases, without any coercion or failure of the State to provide any exculpatory evidence, and further was unable to show any manifest injustice during the proceedings of these cases."

## II. Analysis

On appeal, the Appellant contends that the trial court abused its discretion by denying his motion to withdraw his guilty pleas. He claims that he is entitled to withdraw his pleas to correct manifest injustice because trial counsel failed to give him discovery prior to his guilty plea hearing, which resulted in his receiving the ineffective assistance of counsel. The Appellant notes that after he pled guilty, he viewed a video in which his codefendant stated that anything found in the stolen car belonged to her. He asserts that he would not have pled guilty if he had known about his codefendant's confession. The State argues that the trial court properly denied the motion. We agree with the State.

Initially, we note that the Appellant's notice of appeal appears to be untimely. Rule 4(a) of the Tennessee Rules of Appellate Procedure provides that

> the notice of appeal required by Rule 3 shall be filed with and received by the clerk of the trial court within 30 days after the date of entry of the judgment appealed from; however, in all criminal cases the 'notice of appeal' document is not jurisdictional and the filing of such document may be waived in the interest of justice.

Here, the trial court filed a written order denying the Appellant's motion to withdraw his guilty pleas. The order bears a file-stamp date of August 28, 2019, but the Appellant did not file his notice of appeal until October 1, 2019, thirty-three days after the trial court filed its written order. Nevertheless, in the interest of justice, we will address the Appellant's claim.

Generally, a guilty plea cannot be withdrawn as a matter of right. State v. Mellon, 118 S.W.3d 340, 345 (Tenn. 2003). Tennessee Rule of Criminal Procedure 32(f) provides, though, that "[b]efore sentence is imposed, the court may grant a motion to withdraw a guilty plea for any fair and just reason." Tenn. R. Crim. P. 32(f)(1). However, "[a]fter sentence is imposed but before the judgment becomes final, the court may set aside the judgment of conviction and permit the defendant to withdraw the plea to correct manifest injustice." Tenn. R. Crim. P. 32(f)(2); see also State v. Green, 106 S.W.3d 646, 650 (Tenn. 2003). The decision to allow a defendant to withdraw a plea is a matter addressed to the sound discretion of the trial court. State v. Crowe, 168 S.W.3d 731, 740 (Tenn. 2005).

In the instant case, the Appellant did not file a motion to withdraw his pleas until after he was sentenced. Therefore, he was entitled to withdraw his guilty pleas only to correct manifest injustice. Rule 32 does not define "manifest injustice." Id. at 741-42. Regardless, our courts have determined that

[w]ithdrawal to correct manifest injustice is warranted where: (1) the plea was entered through a misunderstanding as to its effect, or through fear and fraud, or where it was not made voluntarily; (2) the prosecution failed to disclose exculpatory evidence as required by Brady v. Maryland, 373 U.S. 83 (1963), and this failure to disclose influenced the entry of the plea; (3) the plea was not knowingly, voluntarily, and understandingly entered; and (4) the defendant was denied the effective assistance of counsel in connection with the entry of the plea.

State v. Virgil, 256 S.W.3d 235, 240 (Tenn. Crim. App. 2008); see also State v. Turner, 919 S.W.2d 346, 355 (Tenn. Crim. App. 1995). However, "a defendant's change of heart about pleading guilty or a defendant's dissatisfaction with the punishment ultimately imposed does not constitute manifest injustice warranting withdrawal." Crowe, 168 S.W.3d at 743. It is the defendant's burden to establish manifest injustice requiring withdrawal of the guilty plea. Turner, 919 S.W.2d at 355.

Turning to the instant case, the Appellant claims that his guilty pleas should be set aside to correct manifest injustice because he was denied the effective assistance of counsel in connection with the entry of his pleas. Specifically, the Appellant contends that trial counsel did not provide him with discovery before he pled guilty. However, in orally denying the Appellant's motion, the trial court questioned the Appellant's credibility, noting that the discovery materials did not include exculpatory DNA analysis as the Appellant claimed. Moreover, the Appellant did not call trial counsel to testify about whether he provided the Appellant with discovery even though trial counsel was in the courtroom. The Appellant also did not introduce into evidence the video that allegedly showed his codefendant admitting ownership of the drugs. Therefore, we conclude that the Appellant has failed establish that his guilty pleas should be set aside to correct manifest injustice due to his receiving the ineffective assistance of counsel.

To the extent the Appellant is claiming that his failure to receive discovery prevented him from entering his pleas knowingly, voluntarily, and understandingly, the trial court specifically found in its written order that the Appellant pled guilty knowingly and voluntarily. When a defendant enters a plea of guilty, certain constitutional rights are waived, including the privilege against self-incrimination, the right to confront witnesses, and the right to a trial by jury. Boykin v. Alabama, 395 U.S. 238, 243 (1969). Therefore, in order to comply with constitutional requirements a guilty plea must be a "voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970). In order to ensure that a defendant understands the constitutional rights being relinquished, the trial court must advise the defendant of the consequences of a guilty plea, and determine whether the defendant understands those consequences. Boykin, 395 U.S. at 244.

In determining whether a defendant's guilty pleas were knowing and voluntary, this court looks to the following factors:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993).

The record reflects that the Appellant was fifty-five years old and had four prior felony convictions and numerous misdemeanor convictions when he pled guilty. The Appellant testified that trial counsel met with him in court and in jail, that they discussed his cases, and that they discussed the strengths and weaknesses of his cases. The Appellant had been charged with five Class B felonies, one class C felony, one Class D felony, one Class E felony, and several misdemeanors and acknowledged that he was facing a minimum twelve-year sentence if convicted of just one Class B felony. He also acknowledged that he pled guilty in order to avoid a greater penalty that might result from a jury trial. We note that the Appellant received discovery materials forty days prior to his sentencing hearing and that the prison "legal department" helped him review the materials but that he did not move to withdraw his guilty pleas until the trial court ordered that he serve his effective ten-year sentence in confinement.

Moreover, the transcript of the guilty plea hearing shows that the trial court asked the Appellant if trial counsel went over the plea agreement forms with him and that the Appellant said yes. The trial court also asked the Appellant if trial counsel explained the Appellant's rights, and the Appellant again said yes. The trial court asked if trial counsel had "done a good job for you" and if trial counsel had "advised you of all of this," and the Appellant answered both questions affirmatively. Finally, the trial court asked if the Appellant had any questions for trial counsel, and the Appellant responded, "I believe we've discussed now everything." The State then gave its factual account of the crimes. The trial court asked if the Appellant understood the proof against him, and the Appellant said yes. Therefore, based on the record before us, we conclude that the Appellant has failed to show that he did not plead guilty knowingly, voluntarily, and understandingly.

### III.  Conclusion

Based upon the record and the parties' briefs, we affirm the trial court's denial of his motion to withdraw his guilty pleas.

_____
NORMA MCGEE OGLE, JUDGE